UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA CUADRADO, IN HER CAPACITY AS TRUSTEE OF THE DANIEL V. TIERNEY 2011 TRUST, AND SERENITY INVESTMENTS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>SUN HUNG KAI STRATEGIC CAPITAL LIMITED,<br><br>Defendant. | CASE NO. 4:22-cv-01623-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Dkt. No. 42 |

Plaintiffs Emma Cuadrado, in her capacity as Trustee of Daniel V. Tierney 2011 Trust, and Serenity Investments LLC (collectively, "Tierney") bring this action against defendant Sun Hung Kai Strategic Capital Limited ("SHK") in connection with a dispute concerning the transfer from Tierney to SHK of stock in Social Finance, Inc. ("SoFi"). In their First Amended Complaint, Tierney alleges four counts relating to the transfer: (1) conversion; (2) receipt of stolen property; (3) fraud, and (4) negligent misrepresentation. Before the Court is SHK's motion to dismiss Tierney's fraud and negligent misrepresentation claims.

Having carefully considered the papers submitted and the pleadings in this action and for the reasons below, the Court hereby **GRANTS** the motion to dismiss **WITHOUT FURTHER LEAVE TO AMEND.**

I.  BACKGROUND

The following facts are alleged in Tierney's First Amendment Complaint ("FAC").

A. *Initial Negotiations Regarding Stock Transfer*

On August 21, 2017, the parties executed a Stock Transfer Agreement ("STA") pursuant to which Tierney agreed to sell 101,640 Series E Preferred Stock shares in SoFi to SHK in exchange

for approximately $1.6 million. (FAC ¶ 9.)[1] Shortly thereafter, on or about September 12, 2017, the parties agreed to put the stock transfer "on hold" after SHK shared misgivings about investing in SoFi considering negative press reports implicating the company.[2] (*Id.* ¶ 10.) The parties continued to discuss the state of the STA over the course of the fall of 2017, and in December, SHK informed Tierney it wished to cancel the STA and any obligations owed Tierney thereunder. (*Id.* ¶¶ 14-15.) Tierney agreed, and the agreement was voided. (*Id.* ¶ 15.)

However, SHK had in fact come into possession of the SoFi shares in question on or about September 27, 2017, at which point Tierney's stock certificates[3] for the relevant shares were cancelled and new certificates issued by SoFi under SHK's name. (*Id.* ¶ 12.) SHK did not immediately inform Tierney of the transfer upon receipt of the certificates, pay Tierney for the shares, or return the stock to Tierney. (*Id.* ¶¶ 15-17.) Relatedly, Tierney did not insist on payment for the shares as they remained unaware the transfer had been effectuated. (*Id.* ¶¶ 11, 15.)

B. *Discovery of Stock Transfer & Subsequent Negotiations*

Nearly four years elapsed before Tierney learned the shares had long since been transferred to SHK. On May 13, 2021, SoFi sent a message to shareholders regarding a previously announced merger of SoFi with another company in which it instructed shareholders to redeem their physical stock certificates in SoFi for book-entry SoFi shares. (*Id.* ¶ 18; Dkt. No. 36 at Exhibit B.) SoFi also enabled shareholders who lost their physical stock certificates to submit an affidavit requesting replacements which could be converted into book-entry shares. (FAC ¶ 18.) Following the announcement, SHK submitted such an affidavit so that it could convert the shares it held in SoFi into book-entry shares. (*Id.* ¶ 21; Dkt. No. 36 at Exhibit C.) When Tierney asked

---

[1] These shares were converted into 177,138 book-entry SoFi shares in connection with SoFi's merger. FAC ¶ 1.

[2] SHK provides an example of such reports in their Motion to Dismiss. *See* Dkt. No. 42 at 3, n.1 ("*See, e.g.,* Nathaniel Popper & Katie Benner, *'It Was a Frat House': Inside the Sex Scandal That Toppled SoFi's C.E.O.*, N.Y. TIMES (Sept. 12, 2017), *available at* https://www.nytimes.com/2017/09/12/technology/sofi-chief-executive-toxic-workplace.html.").

[3] Prior to the transaction at issue in this dispute, plaintiffs held two SoFi stock certificates: PE-82 for 40,656 shares and PE-83 for 60,984 shares. FAC ¶ 12.

2

SoFi why they had not received book-entry SoFi shares in exchange for their physical stock certificates, they were informed the shares in question had been transferred to SHK in 2017. (FAC ¶ 22.)

Tierney immediately contacted SHK to demand return of the stock. (*Id.* ¶ 23.) SHK responded that Tierney's "broker, SoFi and SoFi's outside legal counsel . . . were responsible for making the unauthorized transfer" and suggested the parties discuss potential remedies with SoFi's legal counsel. (*Id.*) As discussions with SoFi progressed, SHK offered to pay Tierney the value of the stock as stipulated in the STA. (*Id.* ¶ 24.) Tierney rejected this offer, however, as the value of the shares had increased in the years since the STA was negotiated to over $4 million. (*Id.*) Tierney commenced this action shortly thereafter when it had not received payment or return of the shares from SHK. (*Id.* ¶¶ 25-26.) SHK did, however, eventually return the converted, book-entry SoFi shares to Tierney, although the stock had by that point "dropped over 40 [percent] in value." (*Id.* ¶ 26.)

### C. *First Motion to Dismiss*

Shortly after Tierney commenced this action, SHK filed a motion to dismiss each of plaintiffs' causes of action for failure to state a claim under Rule 12(b)(6). (Dkt. No. 10.) The Court considered that motion at a hearing held on September 28, 2022, at which the Court denied defendant's motion to dismiss as to Tierney's fraud and negligent misrepresentation claims and granted Tierney leave to amend. (Dkt. No. 33 at 1:21-22; *accord* Dkt. No. 35 at 18:18-20.) In doing so, the Court admonished plaintiffs to include sufficient factual allegations in their amended complaint to substantiate any such claims, which included reminding plaintiff's counsel of his Rule 11 obligations to submit only well-founded arguments for the Court's consideration. The motion to dismiss before the Court in this proceeding was filed by SHK in response to Tierney's FAC. (Dkt No. 42.)

## II. LEGAL FRAMEWORK

The standards under Federal Rule of Civil Procedure 12(b)(6) are well-known and not in dispute.

Rule 9(b) requires a party bringing a fraud claim to "state with particularity the

circumstances constituting [such] fraud . . . ." Fed. R. Civ. P. 9(b). Further, "[i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice."[4] *Lazar v. Super. Ct.*, 909 P.2d 981, 989 (Cal. 1996). This heightened pleading standard therefore "necessitates pleading *facts* which show how, when, where, to whom, and by what means [the alleged fraudulent] representations were tendered." *Id.* (emphasis in original).

### III.   ANALYSIS

Tierney advances claims for fraud and negligent misrepresentation under California law. The Court considers each in turn.

#### A.   Fraud

Tierney alleges SHK engaged in fraud by (i) making a series of misrepresentations to Tierney concerning the status of the SoFi stock transfer and (ii) concealing their possession of the SoFi stock certificates from September 2017 through the fall of 2021. (FAC ¶¶ 45-61.) The same elements of fraud apply in both the false representation and fraudulent concealment contexts. "Under California law, '[t]he elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F.Supp.3d 797, 821 (N.D. Cal. 2021) (citations omitted).

##### i.   Alleged False Representations Concerning the Stock Transfer

Tierney identifies four alleged fraudulent misrepresentations. The Court examines each.

First, Tierney alleges that, during negotiations between the parties in the fall of 2017, SHK misrepresented that the STA was "on hold" in order to "surreptitiously transfer [Tierney's] shares without having to pay for them . . . ." (FAC ¶ 48.) Tierney does not contend this representation by SHK was necessarily false. Indeed, they make no allegations, for example, that SHK wished for the agreement to remain in effect. Instead, Tierney argues this communication by SHK constitutes a misrepresentation because, when making the statement, SHK intended to, at some future date,

---

[4] Note, however, that Rule 9(b) permits fraudulent intent to be alleged generally, although such allegations must still comply with the pleading standards set forth in *Twombly/Iqbal*. *See* Fed. R. Civ. P. 9(b); *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n. 5 (9th Cir. 2014).

defraud Tierney. (Dkt. No. 50 at 8:9-12.) Despite the Court's admonitions to plead misrepresentation claims with specificity, Tierney does not plead any additional facts to support the allegation. The Court therefore cannot credit Tierney's bald assertions and finds this statement does not constitute an actionable misrepresentation.

Second, Tierney alleges SHK misrepresented its desire to "cancel the [STA]" because SHK had no intention at the time of returning the SoFi shares in its possession to Tierney. (FAC ¶ 10.)[5] Yet, even were the Court to accept Tierney's argument that this statement was false, Tierney has not sufficiently pled the scienter and intent elements of fraud to make this alleged misrepresentation actionable. Tierney asks the Court to infer SHK's scienter and intent to defraud Tierney from SHK's possession of the SoFi shares at the time the STA was voided. (Dkt. No. 50 at 8:28-9:9.) The Court declines to do so in the absence of more detailed pleadings as to SHK's state of mind at the time the contract was rescinded. Contrary to the Court's instructions at the September 28, 2022 hearing for Tierney to plead its fraud claims with particularity, Tierney has alleged no facts which tend to support such a sweeping inference aside from conclusory statements that amount to repackaging their underlying claims (*e.g.,* "[W]hen it induced [Tierney] to cancel the [STA], [SHK] had no intention of returning the shares it had taken under the agreement and did not have any intention of paying for the shares"). (*Id.* at 8:28-9:2.)[6] Rather than alleging facts to substantiate its assertions, Tierney points to authorities suggesting that fraudulent intent can be

---

[5] Tierney takes the view that repudiation of the STA would require making Tierney whole. *See* Dkt. No. 50 at 8:26-28 ("By promising to repudiate that the [*sic*] contract, [SHK] agreed that the parties should be put in the same positions they would have been in had the contract never existed and, thus, it was obligated to return [Tierney's] shares.").

[6] In reaching this conclusion the Court also refuses to assume, as an underlying matter, that SHK must have had knowledge of its possession of the SoFi shares at the time the STA was rescinded. The Court's rationale is two-fold. First, as Tierney well knows, the STA provided for the "[t]he transfer and sale of the Transferred Shares" to "occur simultaneously with the execution of this Agreement by the parties," and did not require SHK to take any further affirmative steps to effectuate the transfer. *See* Dkt. No. 36 at Exhibit A, § 2. It is therefore perfectly plausible SHK obtained the at-issue shares without taking additional malicious steps, as the plaintiffs suggest. Second, Tierney does not allege any facts which support the inference that SHK must have known that it received the shares from SoFi at the time it negotiated for the STA's recession. As the Court has previously emphasized to Tierney, additional circumstantial facts could support such an inference, although none are present in Tierney's FAC.

inferred from circumstantial evidence that a party had no intention of performing a promise made to another party. (*See, e.g.,* Dkt. 50 at 13:8-11 (citing *In re Estate of Barrow*, 27 Cal.App.2d 402, 405 (1938) for the proposition.) These authorities do little to support Tierney's claims, however, as again, Tierney has not sufficiently pled such circumstantial evidence. As the Court therefore finds the elements of fraud are not sufficiently pled with respect to this alleged misrepresentation, it is not actionable.

Third, Tierney alleges SHK engaged in misrepresentation when, "without notifying [Tierney], [SHK] submitted an affidavit to SoFi . . . falsely representing itself to be the owner of the stock certificates . . . ." (FAC ¶ 56.) It appears plaintiffs may have conceded that this communication does not rise to the level of an actionable misrepresentation as they no longer defend it in their Opposition, which the Court interprets as a concession that this alleged misrepresentation is not adequately pled. (*Compare* FAC ¶¶ 18-21 *with* Dkt. No. 50 at 9:24 – 10:8.) Plaintiffs would be correct to do so, as communications made by a defendant to a third party cannot generally form the basis of a claim for fraud by misrepresentation.[7] This communication to SoFi is therefore not actionable as a misrepresentation against Tierney.

Fourth, Tierney alleges SHK misrepresented to Tierney "that SoFi was responsible for the unauthorized share transfer" and that SHK "would return the converted shares." (FAC ¶ 57.) To support this assertion, Tierney relies on a conclusory statement that SHK "knew at the time it made these representations that they were false and that it had no intention of returning the shares." (*Id.*) Such a statement falls well short of the heightened pleading standard for fraud claims and, without more, is insufficient to constitute actionable misrepresentation.[8] *Canatella v. Reverse Mortg. Sols. Inc.*, 2014 WL 7205146 at *9 (N.D. Cal. Dec. 17, 2014) ("[T]he Court will not credit that bare and conclusory allegation—particularly in light of Rule 9(b) pleading requirements."); *Tortilla Factory, LLC v. Rowdy Mermaid Kombucha LLC*, 2018 WL 9802099, at

---

[7] The Court reminded plaintiffs of this at the September 28, 2022 hearing, although they do not appear to have taken it under consideration.

[8] Moreover, as Tierney acknowledges SHK *did* transfer the shares in question back to Tierney after this action was commenced, it strains reason to assert, without additional support, that such a claim was false. FAC ¶ 26.

6

*3 (C.D. Cal. Sept. 11, 2018) ("Plaintiff cannot meet the pleading standards of either Rule 9(b) or *Twombly/Iqbal* since it has failed to plead any facts beyond mere speculation to indicate that Defendants had any knowledge of or involvement in the alleged wrongdoings.").

ii. Alleged Fraudulent Concealment

Tierney separately alleges SHK's failure to disclose its possession of the stock to Tierney constitutes fraud by nondisclosure. (FAC ¶¶ 12-17; Dkt. No. 50 at 10:10-12:28.) Under California law, fraud by nondisclosure can exist "in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Hodson v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (citation omitted).

Tierney asserts the latter three of these circumstances apply to SHK's conduct. First, Tierney alleges SHK had exclusive knowledge of their possession of the SoFi shares and as such their failure to disclose that information to Tierney is actionable as fraudulent nondisclosure. (Dkt. No. 50 at 11:5-14; FAC ¶¶ 12-17.) Tierney's claim is essentially that they "could not have reasonably known that their shares had been taken because [the SoFi] stock certificates [were] electronically issued [to SHK] . . . without [Tierney's] knowledge." (Dkt. No. 50 at 11:14-17; *see also* FAC ¶ 51.) However, Tierney misunderstands the legal trigger for this duty to attach. As SHK correctly notes, "a duty of disclosure . . . exist[s] when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known *or reasonably discoverable by the other party*." *Goodman v. Kennedy*, 556 P.2d 737, 745 (Cal. 1976) (citation omitted) (emphasis supplied).[9] The Court is particularly skeptical that Tierney would be incapable of discovering the stock transfer had occurred given the STA provides that "[t]he transfer and sale

---

[9] Plaintiffs incompletely incorporated this citation into their Opposition to Defendant's Motion to Dismiss. *See* Dkt. No. 50 at 11:19-21 ("The duty to disclose exists where, as here, 'one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to . . . the other party.'") (citation omitted) (ellipses in original).

of [stock] . . . shall occur simultaneously with the execution of [the] [a]greement . . . ." (*See* Dkt. No. 36 at Exhibit A, § 2.) Understanding that the STA set the transfer in motion, even if the transaction was later paused, it would seem prudent for a sophisticated investor like Tierney to at some point confirm whether the shares had in fact been transferred upon execution of the agreement. The Court therefore finds Tierney has not adequately pled why it could not have reasonably discovered that SoFi cancelled and reissued the stock certificates in question under SHK's name.[10] As such, SHK had no affirmative duty to disclose its possession of the shares to Tierney, and its failure to do so does not constitute actionable fraud by nondisclosure.

Second, Tierney asserts SHK actively concealed its possession of the SoFi shares from Tierney. (FAC ¶ 51; Dkt. No. 50 at 12:1-12.) Tierney's argument is unpersuasive. As opposed to "affirmative acts of concealment," Tierney alleges actions by SHK which can more accurately be characterized as failures to disclose, rendering their argument circular. As this court has previously held, allegations of active concealment must consist of more than simple nondisclosure, and therefore Tierney's active concealment claim is not actionable. *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *5 (N.D. Cal. Aug. 19, 2015) ("An allegation of active concealment must plead more than omission; rather, a plaintiff must assert affirmative acts of concealment . . . .").

Third, Tierney alleges "[SHK] made partial representations when it told Plaintiffs it wanted to rescind the [STA] and cancel the transaction, all the while suppressing the material fact that it had already taken the shares that were subject to the agreement." (FAC ¶ 51; Dkt. No. 50 at 12:13-15.) Tierney seeks to support this allegation in two ways. First, plaintiffs assert, without citation to any authority, that, a "party negotiating in a contract—or in this case, the recission of a contract—cannot disclose information in a selective, self-serving manner and must disclose enough information so that its representations are accurate and not misleading." (*Id.* at 12:17-20.) Second, Tierney suggests, without alleging supporting details, that SHK's representation that it

---

[10] Further, any argument Tiernery might make that it could not reasonably discover the stock transfer would be undermined by the fact that Tierney *did in fact* discover as much on their own on September 10, 2021. FAC ¶ 17.

wished to rescind the STA constituted a "half-truth calculated to deceive" Tierney about SHK's true intent of retaining the shares without paying for them. (*Id.* at 12:20.) The Court takes issue with these arguments because they essentially parrot the active concealment and failure to disclose arguments discussed above. At no point in the FAC does Tierney make allegations concerning the nature of the "suppression" SHK supposedly engaged in alongside its "partial representation" that it wished to cancel the STA. Instead, Tierney casts aspersions on SHK's motivations in seeking recission of the STA without pleading facts to support such an inference. The Court therefore declines to find Tierney's "partial representations" claim actionable.

\*   \*   \*

As Tierney's false representation and fraudulent nondisclosure claims are supported by speculative and conclusory statements rather than well-pled supporting facts, the Court finds they cannot withstand defendant's motion. *Fortaleza v. PNC Fin. Servs. Grp.*, 642 F.Supp.2d 1016, 1020 (N.D. Cal. 2009) ( "Vague allegations and mere labels and conclusions are insufficient to withstand a motion to dismiss."). SHK's motion to dismiss as to Tierney's fraud claim is therefore granted.

Should discovery reveal facts that would actually support these claims, the federal rules provide procedures to seek leave to amend.

### B.  Negligent Misrepresentation

In addition to its fraud claim, Tierney asserts SHK made negligent misrepresentations to plaintiffs concerning the stock transfer. The elements of negligent misrepresentation are: "(1) a false representation about a past or existing material fact, (2) made without any reasonable ground for believing it to be true, (3) with the intent to induce the plaintiff to rely upon it, (4) the plaintiff's reasonable and justified reliance on the false representation, and (5) resulting damages." *Miller v. Security Life of Denver Ins. Co.*, 2012 WL 5392275, at \*1 (N.D. Cal. Nov. 2, 2012).

This claim rests on two alleged false representations by SHK, which mirror those advanced under Tierney's fraud theory. First, Tierney alleges SHK misrepresented its desire to "cancel its agreement to purchase [Tierney's] SoFi shares." (FAC ¶ 64.) Tierney argues this statement was untruthful because "[SHK] had no intention of returning [Tierney's] shares and, instead, sought to

9

induce [Tierney] to discharge [SHK's] obligation to pay for the [SoFi stock], as required by the contract." (FAC ¶ 15.) As developed, *supra*, the Court declines to infer that SHK possessed the requisite fraudulent intent to render this representation actionable as a false representation.

Second, Tierney alleges SHK misrepresented to SoFi "that it was the owner" of the shares in question when it submitted an affidavit to SoFi so that it could convert the stock to book-entry shares. (*Id.* ¶ 65.) As addressed, *supra*, this representation was not made to Tierney but to SoFi, and Tierney has not addressed in its pleadings why such a representation may serve as the basis for a negligent misrepresentation claim.

As the Court declines to find either of these two alleged negligent misrepresentations actionable, SHK's motion to dismiss as to Tierney's negligent misrepresentation claim is also granted.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss as to Tierney's fraud and negligent misrepresentation claims **WITHOUT FURTHER LEAVE TO AMEND**. Defendant shall file an answer to the first and second claims within fourteen (14) days of this Order.

This Order terminates Docket Number 42.

**IT IS SO ORDERED.**

Dated: 4/4/2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**