United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENITY INVESTMENTS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUN HUNG KAI STRATEGIC CAPITAL LIMITED, et al.,<br><br>Defendants. | Case No. 22-cv-01623-YGR  (LJC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JOINT DISCOVERY LETTER BRIEF**<br><br>Re: ECF No. 88 |

On December 22, 2023, the parties filed a Joint Discovery Letter Brief which presented several discovery disputes requiring this Court's resolution. ECF No. 88. The Court granted the parties' request to submit additional briefing on the disputes. ECF No. 92. Plaintiffs Emma Cuadrado, as Trustee of the Daniel v. Tierney 2011 Trust, and Serenity Investments LLC filed their Discovery Brief on January 17, 2024. ECF No. 93. Defendant Sun Hung Kai Strategic Capital Limited's (SHK) filed its Discovery Brief on January 24, 2024. ECF No. 97.

The Court heard oral argument from both sides on February 2 and 6, 2024, and ruled from the bench on several discovery disputes, denying most of the relief requested in the Joint Discovery Letter Brief. ECF Nos. 110, 114. The Court, however, took two disputes under submission: 1) SHK's assertion of attorney-client privilege over communications involving its former general counsel, Paul Olivera; and 2) Plaintiffs' request for a protective order as to SHK's subpoena for the deposition of Mark Goodman, Plaintiffs' lead trial counsel. Each dispute is addressed in turn below.

**I.    BACKGROUND**

On August 21, 2017, the parties executed a Stock Transfer Agreement (STA) whereby Plaintiffs agreed to sell 101,640 shares of Series E Preferred stock in Social Finance, Inc. (SoFi) to

1  SHK for a total sum of $1,641,486.  ECF No. 36 (First Amended Complaint, or FAC) ¶ 9; ECF
2  No. 59 (Third-Party Complaint, or TPC) ¶ 17.  On September 11, 2017, SHK told Plaintiffs that it
3  was reconsidering the transaction due to the negative press relating to SoFi.  FAC ¶ 10; TPC ¶ 23.
4  As a result, the parties agreed to put the transaction on hold.  *Id.*

5  Despite the hold, Plaintiffs allege that on or about September 27, 2017, SHK "arranged"
6  for the SoFi stock certificates to be transferred without Plaintiffs' knowledge or consent.  FAC ¶¶
7  12–13.  But according to SHK, it was Orrick Herrington & Sutcliffe LLP (Orrick), the transfer
8  agent appointed by Plaintiffs, that cancelled the stock certificates and reissued them in SHK's
9  name.  TPC ¶ 24.  When SHK employees received the stock certificates, they reached out to
10 Orrick and Scenic Advisement, Inc. (Scenic), Plaintiffs' broker, both of whom said that the
11 transfer had been done in error and that the mistake would be rectified.  *Id.* ¶¶ 25–29.  SHK sent
12 the physical stock certificates back to California, as Orrick requested, and believed the matter had
13 been resolved.  *Id.* ¶ 30.  In December 2017, SHK told Plaintiffs that it wanted to cancel the STA.
14 FAC ¶ 15.  Plaintiffs agreed and discharged SHK's payment obligations, believing that they had
15 retained their SoFi shares and still unaware that they had been transferred to SHK.  *Id.*

16 On June 1, 2021, SoFi conducted its Initial Public Offering (IPO), and SoFi stock was
17 converted into SPAC freely tradeable shares.  TPC ¶ 36.  In August 2021, Plaintiffs contacted
18 SoFi to find out why they had not received their SPAC shares, which is when SoFi told them that
19 their shares had been transferred to SHK back in September 2017.  FAC ¶ 22.  According to
20 Plaintiffs, after learning about the transfer of shares, they contacted SHK and demanded
21 immediate return of the shares as converted.  *Id.* ¶ 23.  The parties reached out to SoFi and Orrick,
22 although Plaintiffs allege that they continued to demand the return of the shares from SHK.  *Id.* ¶
23 24.  After being connected with Plaintiffs by Scenic and advised of the issue, SHK began
24 investigating what had happened.  TPC ¶¶ 38–39.  According to SHK, Plaintiffs at this time still
25 considered the transfer to have happened "inadvertently."  *Id.* ¶ 38.

26 On November 3, 2021, SHK proposed that it pay $1,641,486 for the SoFi shares—the
27 amount called for in the repudiated STA from 2017.  FAC ¶ 24; TPC ¶ 40.  However, Plaintiffs
28 rejected this proposal allegedly because the value of the SoFi shares had increased dramatically

United States District Court
Northern District of California

since 2017 and they were worth over $4 million at that time. FAC ¶ 24. On November 7, 2021, Plaintiffs sent a letter to SHK demanding the return of the SoFi shares no later than November 10, 2021. *Id.* ¶ 25. But SHK says that it did not receive the demand letter because Plaintiffs' outside counsel, Mark Goodman of Baker McKenzie LLP (Baker McKenzie), sent it to a nonexistent email address. TPC ¶¶ 41–42. SHK reached out to Plaintiffs on November 23, 2021, after having heard nothing from them during the preceding three weeks, which is when the demand letter was first brought to its attention. *Id.* SHK retained outside counsel, Mayer Brown LLP (Mayer Brown), and they tried to contact Mr. Goodman, allegedly with no success. *Id.* ¶¶ 44–46.

Plaintiffs initiated this lawsuit on November 29, 2021. FAC ¶ 26. SHK alleges during the month of December, Mayer Brown contacted Mr. Goodman multiple times to request the transfer details so that SHK could transfer the shares to Plaintiffs, again with no success. TPC ¶¶ 46–49. Plaintiffs purportedly did not provide the requested transfer details until January 6, 2022. *Id.* ¶ 51. SHK made the transfer on January 9, 2022, although it was rejected by Plaintiffs, allegedly because they did not recognize it. *Id.* The transfer was finally completed on January 12, 2022. *Id.* ¶ 52.

Plaintiffs' First Amended Complaint brings claims for conversion, receipt of stolen property, fraud, and negligent misrepresentation. ECF No. 36. However, on April 4, 2023, Judge Gonzalez Rogers granted SHK's motion to dismiss the fraud and negligent misrepresentation claims without further leave to amend. ECF No. 56. As such, the only claims that remain are conversion and receipt of stolen property.

**II. DISCUSSION**

**A. Attorney-Client Privilege as to Communications Involving Paul Olivera, Former General Counsel for SHK**

Plaintiffs' counsel traveled to Hong Kong to depose five of SHK's officers and its former general counsel, Paul Olivera. ECF No. 93 at 10.[1] During the officer depositions, SHK's counsel instructed witnesses not to answer questions as to their communications with Mr. Olivera based on

---

[1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system.

3

the attorney-client privilege. *Id.* at 12. Plaintiffs argue that SHK's assertions of privilege were overbroad and included any discussions where Mr. Olivera happened to be present, regardless of whether he said anything during those discussions, and regardless of whether the purpose of his presence was to give legal advice. *Id.* According to Plaintiffs, many of the questions asked at the depositions only called for disclosure of facts and information known to the witnesses, not legal advice provided by Mr. Olivera. *Id.* at 12–13. Because of counsel's privilege objections at the officer depositions, Plaintiffs decided to postpone Mr. Olivera's deposition until the Court could weigh in on the privilege issue. *Id.* at 13. SHK, for its part, argues that Mr. Olivera was tasked with investigating and responding to Plaintiffs' claim that SHK possessed their SoFi stock, and "rendered legal advice in the course of doing so." ECF No. 97 at 8. Mr. Olivera purportedly provided oral legal updates at SHK's weekly management meetings and engaged in direct conversations with SHK employees as part of his investigation. *Id.* at 13.

### 1. Legal Standard

As an initial matter, in their Discovery Brief, Plaintiffs rely on federal common law as to the question of whether the attorney-client privilege applies to communications involving Mr. Olivera. ECF No. 93 at 15–16. But this action falls under the Court's diversity jurisdiction and does not implicate federal law. *See* FAC ¶ 5. In diversity cases, a federal court must determine "the existence or extent" of a privilege under the state law that otherwise governs decision of the case, which in this case is California law. *Star Ed., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501); *see also* FAC ¶ 7 (noting that the STA called for the application of California law to any dispute between the parties regarding the transfer of SoFi shares). At the hearing on February 6, 2024, Plaintiffs' counsel conceded that California law controls the attorney-client privilege issue here.

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to

1  support a prima facie claim of privilege," then the privilege is presumed to apply, and "the
2  opponent of the claim of privilege has the burden of proof to establish the communication was not
3  confidential or that the privilege does not for other reasons apply." *Id.*

4  "[T]o determine whether a communication is privileged, the focus of the inquiry is the
5  dominant purpose of the relationship between the parties to the communication." *Clark v.*
6  *Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship
7  between the parties to the communication was one of attorney-client, the communication is
8  protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication
9  but is instead the relationship of the communicators." *Id.* at 52 (citing *Costco*, 47 Cal. 4th at 740
10 (holding that if a court determines that "the communications were made during the course of an
11 attorney-client relationship, the communications, including any reports of factual material, would
12 be privileged, even though the factual material might be discoverable by some other means."))

13 However, "[i]t is established that otherwise routine, non-privileged communications
14 between corporate officers or employees transacting the general business of the company do not
15 attain privileged status solely because in-house or outside counsel is 'copied in' on
16 correspondence or memoranda." *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485,
17 1504 (2007). And a corporation cannot "shield facts, as opposed to communications, from
18 discovery. Any relevant fact may not be withheld merely because it was incorporated into a
19 communication involving an attorney." *Id.* Finally, "the attorney-client privilege is inapplicable
20 where the attorney merely acts as a negotiator for the client, gives business advice or otherwise
21 acts as a business agent.*"* *Chicago Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151
22 (1985) (citing *Aetna Cas. & Sur. Co. v. Superior Ct.*, 153 Cal. App. 3d 467, 475 (1984)).

23 **2. Analysis**

24 SHK's evidence is sufficient to establish that the "dominant purpose" of Mr. Olivera's
25 work on this matter was to investigate and provide advice and counsel as to what happened in
26 2017 with the transaction contemplated by the STA. SHK relies primarily on the deposition
27 testimony of Lincoln Yeh, allegedly "head of investments" at the company (*see* ECF No. 93 at 6).
28 Mr. Yeh testified that he "pulled" Mr. Olivera into conversations about the SoFi shares because "it

5

1  just seemed as if it was the right thing to do since he was general counsel and it related to kind of a
2  matter from the past," and there was a question "broadly [as to] whether the transaction was
3  completed or not, dating back from a few years ago." ECF No. 93-19 at 8, 9.  Mr. Yeh also
4  testified that SHK is "a very lean organization," that Mr. Olivera "manages all the legal affairs of
5  the firm, not just related to investments," and that is why he "thought probably roping in Paul
6  [Olivera] as a first step might make sense." *Id.* at 30.  Even if Mr. Olivera's investigation was
7  factual in nature, a major point emphasized by Plaintiffs, the investigation was related to a dispute
8  as to legal ownership of shares which SHK possessed— a matter on which he was tasked with
9  advising the company on in his role as general counsel. *See Scripps Health v. Superior Ct.*, 109
10 Cal. App. 4th 529 (2003) (holding that the attorney-client privilege applied to internal reports
11 created by Scripps employees, because even though they primarily involved "observational
12 information" as opposed to "opinion information," they were a communication "intended for the
13 information or assistance of the attorney in so defending" the insured) (quoting *Travelers Ins.*
14 *Companies v. Superior Ct.*, 143 Cal. App. 3d 436, 449 (Ct. App. 1983)).

15      Plaintiffs offer no evidence to establish that the communications with Mr. Olivera were
16 not confidential, or that he was acting as a business agent as opposed to an attorney, or that the
17 privilege does not for other reasons apply.  They argue that Mr. Yeh sought Mr. Olivera's
18 involvement in SHK's discussions regarding the SoFi shares at issue because of his seniority at the
19 company and because he had "background knowledge" of the relevant facts.  ECF No. 93 at 17.
20 But Mr. Olivera was not even employed by SHK in 2017 when the parties executed the STA.
21 ECF No. 97 at 14.  He had no "background knowledge" of the events at issue.  Plaintiffs also
22 claim that many of the questions asked were only soliciting the disclosure of facts, not legal
23 advice.  ECF No. 93 at 16.  Yet the record demonstrates that the questions specifically concerned
24 the content of communications between SHK employees and Mr. Olivera.  *See, e.g.*, ECF No. 93-
25 19 at 10 ("Q. And what did you discuss with Mr. McGraw about the SoFi shares?  Mr. TA: Before
26 you answer, to the extent that any discussions involved Mr. Olivera as counsel, as general counsel
27 of the company, I instruct you not to answer that question.  THE WITNESS: I think -- I think all
28 the conversations with Brendan, you know, Paul was -- or, Mr. Olivera was present.")  Under

United States District Court
Northern District of California

California law, the entirety of a communication between client and attorney is privileged, even if it includes "factual" information in addition to legal advice. *See Costco*, 47 Cal. 4th at 735 ("[B]ecause the privilege protects the transmission of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means."))

Plaintiffs suggest that SHK seeks to protect as privileged any discussions where Mr. Olivera "happened to be present… regardless of whether [he] said anything at all." ECF No. 93 at 12. It is true that otherwise non-privileged communications between employees do not become privileged by "cop[ying] in" in-house counsel. *See Zurich*, 155 Cal. App. 4th at 1504. But Plaintiffs point to nothing in the record suggesting that Mr. Olivera did not participate in the conversations where he was present and where the SoFi shares issue was discussed. Nor do Plaintiffs highlight any question(s) in the deposition transcript where their counsel asked a question about a witness's independent understanding of a fact, and SHK's counsel instructed him or her not to answer simply because they conveyed that fact to Mr. Olivera.

Plaintiffs separately claim that "the mere fact that a witness…learns facts from a lawyer does not make those facts privileged." ECF No. 93 at 16. This proposition is not supported by California law. *See Mitchell v. Superior Ct.*, 37 Cal. 3d 591, 601 (1984) (holding that the attorney-client privilege applies to "information transmitted between [the plaintiff] and her attorney in the course of their relationship as client and lawyer, as well as advice given by [the attorney] to his client in the course of such professional relationship.") Any facts learned by SHK employees during communications with Mr. Olivera (as opposed to facts over which they have direct, first-hand knowledge) are protected by the attorney-client privilege.

Finally, Plaintiffs argue that the privilege does not apply because Mr. Yeh "did not anticipate litigation when he first involved Mr. Olivera." ECF No. 93 at 13. But the attorney-client privilege applies regardless of whether there is anticipated litigation. *See Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371(1993) ("[U]nder the Evidence Code, the attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation; the privilege applies not only to

communications made in anticipation of litigation, but also to legal advice when no litigation is threatened.”))

Given all the above, SHK did not err in asserting the attorney-client privilege over communications its employees had involving Mr. Olivera when he was investigating the transfer of SoFi shares in 2017 from Plaintiffs to SHK, and when he oversaw how SHK would respond to Plaintiffs’ claim, in his role as general counsel of the company. As such, there is no need to reopen the depositions that Plaintiffs took in Hong Kong, and the parties can proceed with Mr. Olivera’s deposition with the understanding that Plaintiffs cannot ask about privileged communications he had with SHK employees during the course of his investigation.

**B. Subpoena for Deposition of Mark Godman, Lead Trial Counsel for Plaintiffs**

SHK wants to depose Mr. Goodman, who is the lead trial counsel for Plaintiffs. ECF No. 93 at 18. Plaintiffs argue that the subpoena for Mr. Goodman’s deposition “seeks irrelevant information, needlessly threatens the attorney-client relationship, and is improper under clear federal and California case law.” *Id.* SHK claims that it needs his deposition testimony because “the gravamen of Plaintiffs’ allegations” is that SHK failed to return the SoFi stock promptly when notified in October 2021 of the unauthorized transfer, and as part of its defense, SHK will contend that any delay was caused by the “errors or unresponsiveness” of Mr. Goodman. ECF No. 97 at 17–18. Specifically, SHK wants to depose Mr. Goodman “concerning, among other matters: (a) why he sent the November 7, 2021 demand letter to an incorrect email address, and whether he received any email ‘bounceback’ notification; (b) whether Mr. Goodman personally received the communications from Mayer Brown, and whether he understood the requests from Mayer Brown for a phone call to facilitate the return of the STA Stock and for transfer instructions; (c) Mr. Goodman’s reasons for ignoring Mayer Brown’s repeated requests for a phone call and for transfer instructions, including whether he knowingly chose to ignore the requests or whether there were any factors that precluded Mr. Goodman from acceding to Mayer Brown’s requests; and (d) the reasons for the initial rejection of SHK’s attempted transfer of the STA Stock on January 12, 2022.” *Id.* at 20–21.

### 1. Legal Standard

Rule 30 of the Federal Rules of Civil Procedure provides that "[a] party…may depose any person." Fed. R. Civ. P. 30(a)(1). Therefore, there is no express prohibition against taking attorney depositions, including depositions of the attorneys representing the opposing parties in the case. However, "[t]he Supreme Court of the United States [has] alluded to a presumption that trial counsel should not be forced to testify because doing so compromises the standards of the legal profession." *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04-0240 PJH(JL), 2004 WL 3174427, at *2 (N.D. Cal. Nov. 15, 2004) (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

In *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Eighth Circuit held that in order for a court to allow opposing counsel's deposition, the party seeking to take the deposition has to show that: "(1) no other means exist to obtain the information than to depose opposing counsel (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (internal citation omitted). The Ninth Circuit has not issued a published decision on this issue, although in an unpublished decision, it did follow the three-factor *Shelton* test to determine whether a party was allowed to depose its opposing counsel in a pending case. *See Willer v. Las Vegas Valley Water Dist.*, 176 F.3d 486 (9th Cir. 1999) (citing *Massachusetts Mutual Life Ins. Co.*, 177 F.R.D. 472, 479 (N.D.Cal.1998) (citing *Shelton*, 805 F.3d at 1327)). Numerous courts in this district and across the country have also followed the *Shelton* test for situations such as these, including California courts applying California law. *See, e.g., Fausto v. Credigy Servs. Corp.*, No. C 07-5658 JW (RS), 2008 WL 4793467, at *1 (N.D. Cal. Nov. 3, 2008), *objections overruled*, No. C 07-05658 JW, 2008 WL 5158915 (N.D. Cal. Dec. 9, 2008); *Spectra-Physics, Inc. v. Superior Court*, 198 Cal. App. 3d 1487, 1496 (1988).

### 2. Analysis

SHK has established the relevancy of the information it seeks related to the purported delay caused by Mr. Goodman in SHK's returning the SoFi shares to Plaintiffs. SHK, however, fails to satisfy the other parts of the *Shelton*/*Spectra-Physics* test, and thus Plaintiffs' request for a protective order must be granted.

//

9

### a. No Other Means to Obtain Information Sought

SHK has not demonstrated that there are no other means available to obtain the information it seeks. At the February 6, 2024 hearing, SHK admitted that it did not try to obtain the facts at issue through other discovery techniques such as an interrogatory request. *See Est. of Ruchti*, 12 Cal. App. 4th 1593, 1600–01 (holding that deposing party did not meet three-part *Shelton/Spectra-Physics* test where "[p]roperly drafted interrogatories could [have] elicit[ed] the facts upon which" the party "based their contentions and would require the identification of witnesses and of documents.") Nor has SHK "demonstrated any other efforts to identify the information" through discovery of other witnesses, *Nocal, Inc.*, 2004 WL 3174427, at *2, in a way that would avoid "disrupt[ing] the adversarial system and lower[ing] the standard of the profession." *Shelton*, 805 F.2d at 1327.

### b. Information Sought is Relevant and Non-Privileged

SHK argues that it needs Mr. Goodman's testimony to prepare its defense to Plaintiffs' conversion claim. ECF No. 97 at 20–21. Plaintiffs allege that SHK was in wrongful possession of the SoFi shares between November 2021 and January 2022, despite admitting that SHK did not "rightfully own the shares" and despite "Plaintiffs' repeated demands that the shares be returned immediately." FAC ¶¶ 26, 35. Plaintiffs are seeking damages for "the loss of the use of this SoFi stock" from late October 2021 to when the shares were eventually returned on January 12, 2022. ECF No. 97-8 at 18. But SHK contends that Mr. Goodman is the reason it was "precluded" from returning the SoFi shares earlier than January 2022, and therefore, Plaintiffs' conversion must fail, or at the very least, they should not be allowed to recover under a "lost profits" theory. ECF No. 97 at 20–21.

Plaintiffs fail to provide the Court with any compelling arguments or reasons as to why the information sought by SHK is not relevant to its defense as to the conversion claim. Plaintiffs do argue that the deposition would "invade privilege" because Mr. Goodman communicated with Mayer Brown, SHK's outside counsel, in his role as Plaintiffs' litigation counsel, thus SHK seeks "testimony squarely covering Plaintiffs' privileged pre-litigation investigations and litigation conduct." ECF No. 93 at 23. However, SHK notes that it "does not seek any testimony relating to

Mr. Goodman's communications with his clients, or Mr. Goodman's mental thoughts concerning the litigation." ECF No. 97 at 21. What it seeks is testimony about Mr. Goodman's communications and interactions with Mayer Brown, opposing counsel. Plaintiffs do not elaborate on how Mr. Goodman's conduct as he communicated with Mayer Brown would be protected by the attorney-client privilege. Nor do they explain how his testimony about these communications would touch on Plaintiffs' "privileged pre-litigation investigations."

On the other hand, Plaintiffs argue that written correspondence between Mr. Goodman and Mayer Brown was labeled by Mayer Brown as "settlement communications," which means that those emails and the parties' related "settlement discussions and conduct" would be inadmissible under Rule 408 of the Federal Rules of Evidence. ECF No. 93 at 22. Rule 408 provides that "conduct or a statement made" during settlement negotiations is inadmissible "either to prove or disprove the validity or amount of a disputed claim…". Fed. R. Evid. 408(a)(2). Courts can admit this evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

Here, the correspondence from Mayer Brown to Mr. Goodman are clearly settlement communications which SHK intends to use to prove the "invalidity" of Plaintiffs' conversion claim, which is prohibited by Rule 408(a)(2). *Krause v. Krause*, No. 121CV01706JLTSAB, 2023 WL 2541912, at *19 (E.D. Cal. Mar. 16, 2023) (quoting *Mottley v. Spillan*, No. 2:07-CV-384, 2008 WL 926580, at *3 (S.D. Ohio Apr. 3, 2008)). SHK's assertion of undue delay by Mr. Goodman "is closely tied to the underlying issue of liability," to which Rule 408's "general prohibition" applies. *Elia v. Roberts*, No. 1:16-CV-0557 AWI EPG, 2017 WL 4844296, at *9 (E.D. Cal. Oct. 25, 2017). Rule 408(a)(2) also applies to the circumstances surrounding the November 7, 2021 demand letter sent to a nonexistent email address, because a step to send a settlement communication to a mistaken email address amounts to conduct undertaken as part of settlement negotiations, even if the conduct was in error.

### c. Information Crucial to Preparation of the Case

SHK has not sufficiently demonstrated that the information it seeks from Mr. Goodman is

11

crucial to the preparation of its case. As explained above, the information is relevant to SHK's defense against Plaintiffs' conversion claim. SHK argues that it needs the testimony to "negate any finding that there was a conversion…" ECF No. 97 at 22. But "for information to be crucial, it must have some greater importance to the action than merely being relevant," otherwise, "the third *Shelton* factor" would be rendered "redundant." *Ditech Fin. LLC v. SFR Invesstments Pool 1, LLC*, No. 2:15-CV-476-JCM-VCF, 2016 WL 4370034, at *3 (D. Nev. Aug. 15, 2016). SHK has not provided any reason for the Court to believe that Mr. Goodman's deposition testimony is crucial in addition to being relevant.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' request to reopen witness depositions where SHK asserted the attorney-client privilege as to communications involving its former general counsel, Paul Olivera, is **DENIED**. The parties can proceed with Mr. Olivera's deposition with the understanding that Plaintiffs cannot ask about privileged communications he had with other SHK employees during the course of his investigation into the SoFi shares issue.

Plaintiffs' motion for a protective order to block the deposition of Mr. Goodman, their lead trial counsel, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: February 9, 2024

LISA J. CISNEROS
United States Magistrate Judge

12